# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 18, 2014        Decided April 29, 2014

No. 13-5103

ARK INITIATIVE AND DONALD DUERR,
APPELLANTS

v.

THOMAS L. TIDWELL, U.S. FOREST SERVICE AND ASPEN
SKIING COMPANY,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01467)

———

*William S. Eubanks II* argued the cause for appellants. With
him on the briefs was *Eric R. Glitzenstein*.

*Nicholas A. DiMascio*, Trial Attorney, U.S. Department of
Justice, argued the cause for appellees. With him on the brief
were *Robert G. Dreher*, Acting Assistant Attorney General, and
*Allen M. Brabender*, Attorney.

*Ezekiel J. Williams*, *Steven K. Imig*, and *Benjamin H. Kass*
were on the brief for intervenor-appellee Aspen Skiing
Company.

Before: ROGERS, GRIFFITH and SRINIVASAN, *Circuit Judges*.

Opinion for the court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Responding to a petition by the State of Colorado, the U.S. Forest Service in the Department of Agriculture promulgated a final rule revising its inventory of protected "roadless" land in Colorado. *Special Areas; Roadless Area Conservation; Applicability to the National Forests in Colorado*, 77 Fed. Reg. 39,576 (July 3, 2012) ("2012 Colorado Rule"). Two weeks later, The Ark Initiative, a non-profit environmental group ("Ark"), sent an Emergency Petition to the Forest Service seeking "roadless" designation for roughly 1,000 acres on Burnt Mountain in the Snowmass ski area and suspension of the Aspen Skiing Company's authorization to cut trees on that land. The Service denied the petition and Ark filed suit, alleging that the Service had inadequately explained its denial and failed to address relevant evidence. The district court granted summary judgment to the Forest Service and the Company, and denied reconsideration. Ark appeals. Although we reject the challenge by the Service and the Company to Ark's standing, we agree that Ark's challenges lack merit and we therefore affirm.

**I.**

"Roadless areas are, among other things, sources of drinking water, important fish and wildlife habitat, semi-primitive or primitive recreation areas, including motorized and nonmotorized recreation opportunities, and natural-appearing landscapes." 2012 Colorado Rule, 77 Fed. Reg. at 39,577. It is the Department's view that "tree cutting, sale or removal, and road construction/reconstruction have the greatest likelihood of altering and fragmenting landscapes, resulting in immediate,

long-term loss of roadless area values and characteristics, and there is a need generally to prohibit these activities in roadless areas." *Id.* But acknowledging that the State of Colorado "has indicated flexibility is needed to accommodate State-specific situations and concerns in Colorado's roadless areas," including "accommodating existing permitted or allocated ski areas," the Department concluded that accurate mapping and effective management of Colorado roadless areas were appropriate. *Id.* After considering numerous comments and alternative proposals, the Department, acting through the Forest Service, selected one of the alternatives that it concluded would "provide long-term management of [these areas] to ensure roadless area values are passed on to future generations, while providing for Colorado-specific situations and concerns that are important to the citizens and economy of Colorado." *Id.* Succinctly put, the 2012 Colorado Rule established "a high level of conservation of roadless area characteristics on approximately 4.2 million acres," designating as roadless 409,500 acres that were not previously protected as "roadless," while removing protection for 459,100 acres that "ha[d] been determined to be substantially altered" and 8,300 acres "for ski area management." *Id.* at 39,577–78.

The present dispute centers around an undeveloped slope on Burnt Mountain that is within the eastern perimeter of the Snowmass permitted ski area near Aspen, Colorado. Although some portion of the Snowmass resort is privately owned, most of it is situated on public lands in the White River National Forest. Since the resort's opening in 1967, the Forest Service has granted special use permits and approved master development plans allowing the Aspen Skiing Company to maintain and improve the ski terrain, including cutting trees and building ski lifts. The disputed portion of Burnt Mountain has been slated for additional ski run development for nearly two decades. In 2001, the Forest Service designated a small portion

of Burnt Mountain as "roadless," thereby "prohibit[ing] road construction, reconstruction, and timber harvest in inventoried roadless areas" in order to preserve "large unfragmented tracts of land" for long-term stewardship and conservation. *Special Areas; Roadless Area Conservation*, 66 Fed. Reg. 3244, 3244, 3245 (Jan. 12, 2001) ("2001 Rule").

In 2006, in accord with the Company's master development plan, the Forest Service authorized the Company to clear ski runs on Burnt Mountain by selectively removing trees and brush. Ark and others challenged the Service's authorization of new ski runs on the ground that the area was, in fact, roadless, and therefore protected, even though it was not included in the "roadless" inventory. *See* Notice of Appeal at 56–67 (Apr. 10, 2006). Their administrative appeal of the decision authorizing the 2006 Snowmass Ski Area Improvement Project was largely unsuccessful, *see* Forest Serv. Reg. Appeal Decision at 1–2 (May 22, 2006), and their efforts in court to overturn the decision failed, *see Ark Initiative v. U.S. Forest Serv.*, 2010 WL 3323661 (D. Colo. Aug. 18, 2010); *Ark Initiative v. U.S. Forest Serv.*, 660 F.3d 1256 (10th Cir. 2011).

When the 2012 Colorado Rule redrew the roadless area boundaries in the State to exclude permitted ski areas and to add nearly 410,000 acres to the Colorado "roadless" inventory, the disputed parcel was not added to the inventory. The previously listed "roadless" portion of Burnt Mountain, which is also within the permitted ski area, was removed from the "roadless" inventory. The rulemaking proceedings generated substantial public participation, but Ark did not choose to comment. Instead, less than two weeks after the 2012 Colorado Rule was promulgated, Ark submitted an "Emergency Petition" to the Forest Service claiming that the disputed parcel had been omitted from the Colorado roadless inventory due to "a factual error." Emerg. Pet. at 9 (July 16, 2012). Alternatively, if no

factual or "administrative error" were found, the Forest Service "should consider whether 'changed circumstances' exist." *Id.* n.2.

The Emergency Petition requested that "the Service invoke its authority [under] 36 C.F.R. § 251.60, to temporarily suspend, on an emergency basis, the narrow authorization to proceed with activities within this parcel until such time as the Service can assess this parcel and make a final determination concerning the roadlessness of this tract." *Id.* at 8. The regulation authorizes emergency suspension of a special use permit "for specific and compelling reasons in the public interest" or when suspension is "necessary to protect the public health or safety or the environment." 36 C.F.R. § 251.60(a)(2)(i)(D), 251.60(f). The petition argued that the disputed parcel's omission from the "roadless" inventory was a "factual error" because the Burnt Mount parcel was roadless, as indicated by "the best available evidence," namely, sworn testimony, on-the-ground conditions, satellite imagery, mapping, and aerial photography. Emerg. Pet. at 8. "[B]ecause the Service has never taken a 'hard look' at the precise impacts of cutting trees for new ski runs and a traverse trail on this parcel's roadless characteristics, nor even disclosed such impacts to the public," the petition stated, "it is imperative that the Service revisit this issue, both from a roadless inventory and [National Environmental Policy Act ("NEPA")] standpoint." *Id.* at 10. The petition requested the Service to designate the disputed parcel as "roadless" and, pending its decision, to suspend the Company's 2006 authorization to cut trees there.

The Forest Service denied the Emergency Petition by two letters, one from a Service Supervisor and the other from the Chief of the Service. Both letters referenced the prior unsuccessful litigation concerning the 2006 Improvement Project and the recent conclusion of the 2012 Colorado

rulemaking. The Chief's letter stated that the Service was "satisfied that the Burnt Mountain ['roadless'] boundary is appropriate," Forest Serv. Ltr., Sept. 7, 2012, and the Supervisor advised that the Service was already "working with [the Company] on the implementation schedule for the activities," Forest Serv. Ltr., Aug. 17, 2012.

Ark challenged the Forest Service's decision in federal district court and sought an injunction against the Company's planned tree-cutting in the Burnt Mountain parcel. Following the grant of summary judgment to the Forest Service and the Company, *see Ark Initiative v. Tidwell*, 895 F. Supp. 2d 230, 241 (D.D.C. 2012), the Company carried out its planned project and advised the district court that it may carry out further activities in the future pursuant to the 2006 authorization. *See* Aspen Skiing Co. Br. Regarding Whether the Controversy is Moot at 1–2. The district court denied Ark's motion for reconsideration. *See Ark Initiative v. Tidwell*, No. 12-1467 (D.D.C. Feb. 14, 2013).

Ark appeals, and this court reviews the grant of summary judgment *de novo*. *See Dunning v. Quander*, 508 F.3d 8, 9 (D.C. Cir. 2007). The court may affirm the grant of summary judgment on any ground properly raised and supported by the record. *See Jones v. Bernanke*, 557 F.3d 670, 676 (D.C. Cir. 2009); *EEOC v. Aramark Corp., Inc.*, 208 F.3d 266, 268 (D.C. Cir. 2000). Where, as here, there is a challenge to agency action under the Administrative Procedure Act ("APA"), this court will uphold the agency's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This court's review of the denial of reconsideration is typically limited to abuse of discretion because reconsideration "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear

error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)); *see also* FED. R. CIV. P. 59(e).

## II.

As a threshold matter, the court addresses the objection by the Service and the Company that Ark lacks standing under Article III of the Constitution to challenge the Forest Service's final action denying the Emergency Petition. Because Ark is the party invoking the court's jurisdiction, it bears the burden of demonstrating that it satisfies the "irreducible constitutional minimum" of standing: (1) an "injury in fact" that is "concrete and particularized" as well as "actual or imminent"; (2) a "causal connection" between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted).

Only the second and third elements are at issue. Ark has clearly demonstrated a cognizable injury-in-fact: its founder's declaration in the district court stated that the Company's tree-cutting would "permanently reduce the places [he] enjoy[s] going to appreciate nature" and would "irreparably impair [his] ability to observe wildlife . . . in this area." Duerr Decl. ¶ 14. Such aesthetic injuries constitute injury-in-fact. *See Defenders of Wildlife*, 504 U.S. at 562–63. The Forest Service and the Company contend, however, that Ark cannot show causation and redressability because the grandfathering provision in the 2012 Colorado Rule preserves the Company's prior 2006 authorization to cut trees on the Burnt Mountain parcel regardless of the area's "roadless" status.

The grandfathering provision provides that the 2012 Colorado Rule "does not revoke, suspend, or modify any permit, contract, lease, or other legal instrument authorizing or granting rights to the occupancy and use of National Forest system land issued prior to July 3, 2012[.]" 36 C.F.R. § 294.48(a). Even if the disputed parcel were designated as "roadless," the Service and the Company maintain that Ark's injury would persist because the Company's 2006 authorization to cut trees in that area trumps any limitations the final rule might otherwise impose. Likewise, they maintain, it is the 2006 authorization, not the lack of "roadless" status, that causes Ark's injury.

Ark, on the other hand, interprets the grandfathering provision not to have the "sweeping . . . effect" of "foreclos[ing], as a matter of law, the Service's discretion in modifying a pre-2012 project decision." Reply Br. 14. It points to another provision in the 2012 Colorado Rule stating that "[n]othing in this subpart shall prohibit a responsible official from further restricting activities allowed within Colorado Roadless Areas." 36 C.F.R. § 294.48(c). Under Ark's interpretation, the grandfathering provision cannot operate as the Service and the Company suggest because that would "read out of the regulation the 'changed circumstances' and 'administrative correction[s]' provision of the [2012 Colorado Rule, 36 C.F.R. § 294.47(a), (b)]." Reply Br. 15. Additionally, noting that the Service relies on the grandfathering provision for the first time on appeal, Ark references 36 C.F.R. § 294.42, which provides that "[t]rees may not be cut, sold, or removed in Colorado Roadless Areas" unless a "responsible official" determines an exception applies. 36 C.F.R. § 294.42(a), 294.42(c); Reply Br. 8 n.1.

Absent another basis for Ark's Article III standing, this court's jurisdiction turns on whether a proper interpretation of the grandfathering provision precludes the relief Ark seeks. For

purposes of demonstrating standing, Ark need not convince this court that its interpretation is correct. Rather, Ark's "standing depends upon whether its interpretation of the [grandfathering provision], under which th[e] [2012 Colorado Rule] . . . would not preclude the relief it seeks, is *non-frivolous*." *United Transp. Union – Ill. Legislative Bd. v. STB*, 175 F.3d 163, 166 (D.C. Cir. 1999) (emphasis added). Ark has met its burden here. The district court concluded, in rejecting the challenge to Ark's standing, that roadless designation would give Ark a procedural right to have a "responsible official" determine whether tree-cutting may proceed on the disputed parcel. *See Ark Initiative*, 895 F. Supp. 2d at 240 (citing 36 C.F.R. § 294.42). The Service contends that the grandfathering provision obviates that procedural right. *See* Fed. Appellee's Br. 29–30. Yet Ark makes a plausible argument that even if an authorization to cut trees has been "grandfathered" in a new roadless area, the "responsible official" may override such authorization because "[n]othing" in the final rule "prohibit[s] a responsible official from further restricting activities allowed within Colorado Roadless Areas." 36 C.F.R. § 294.48(c); Reply Br. 14–15. Having advanced a non-frivolous interpretation of the 2012 Colorado Rule under which the causation and redressability of its injury are apparent, Ark has Article III standing to challenge the Forest Service's denial of the Emergency Petition.

## III.

The Forest Service's denial of Ark's Emergency Petition was neither unexplained, unreasonable, nor unduly brief under the circumstances. Under the Administrative Procedure Act, the Service was required to give a "brief statement of the grounds" for its denial of Ark's Emergency Petition, unless such denial was "self-explanatory" or merely "affirming a prior denial." 5 U.S.C. § 555(e). "Although nothing more than a brief statement is necessary, the core requirement is that the

agency explain why it chose to do what it did." *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) (internal quotation marks omitted). That explanation must evince reasoned decision-making. *See Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010); 5 U.S.C. § 706(2)(A). The Service has satisfied these requirements.

The Chief of the Forest Service explained in his September 7, 2012 letter that the 2012 Colorado Rule revising roadless boundaries had been finalized only weeks before the Emergency Petition was submitted. In view of the "extensive public involvement" in the rulemaking, including "[m]ore than 310,000 public comments, over a 6-year period," the Chief wrote that the Service was "satisfied that the Burnt Mountain ['roadless' area] boundary is appropriate." He noted that the disputed Burnt Mountain parcel is "within [the Company's] Master Development Plan in the permitted boundary," and that the "roadless" area inventory for the 2012 Colorado Rule excluded lands within ski area permitted boundaries. *See* 2012 Colorado Rule, 77 Fed. Reg. at 39,576. The Chief further noted that "[i]n addition, changes to the area were made based on site-specific knowledge of White River National Forest personnel." Both the Chief's and the Supervisor's letters referred to Ark's unsuccessful challenge to the 2006 plan with respect to the same parcel of land, the Chief observing in his letter that "[t]he roadless area inventory that delineated the Burnt Mountain roadless area" had previously been subject to "public review and comment" and "was upheld by [the Service] during appeal." Therefore, the Chief stated the Service saw "no reason to revisit that decision."

Ark maintains the Forest Service cannot rely on the 2012 Colorado rulemaking because the final rule never "contemplated, addressed, or analyzed" the disputed Burnt Mountain parcel. Appellants' Br. 30. Rather, Ark contends,

"the [2012 Colorado Rule] applies *only* to the specifically enumerated parcels that were removed from the roadless inventory based on specific factual determinations as to their roadless qualities" and "was never intended to permanently foreclose roadless designation of any parcels within ski area boundaries (including the disputed parcel)." *Id.* Ark elaborates that "the Service made a threshold determination that certain enumerated parcels totaling 8,260 acres are in fact degraded and thus are no longer roadless," and "then made a formal decision . . . to remove these specifically enumerated acres from the roadless inventory." *Id.* at 30 n.5. In fact, the 8,260 acres correspond to the "roadless" acreage that had overlapped with permitted ski areas and was removed from the "roadless" inventory for that reason. *See* 2012 Colorado Rule, 77 Fed. Reg. at 39,578. Although conceding that the Forest Service decided that all previously designated roadless parcels inside ski areas should be *removed* from the roadless inventory, Ark contends that the 2012 Colorado Rule did not address whether other parcels inside ski areas that had not yet been designated as roadless should be *added* to the inventory.

The preamble to the 2012 Colorado Rule stated that the affected ski-area acres "*include* roadless acres with degraded roadless area characteristics due to the proximity to a major recreational development." *Id.* (emphasis added). Contrary to Ark's view, there was no assertion that *all* 8,260 acres were "degraded." Rather, the Service explained that removing all ski-area acres from the roadless inventory would "ensure [that] future ski area expansions within existing permit boundaries" are "not in conflict" with the requirements for roadless lands, and would "address one of the State-specific concerns identified by the State of Colorado," *id.* — namely, to "remove from roadless inventory all areas allocated . . . in Colorado to ski area special uses, including all areas inside special use permit boundaries," Colo. Roadless Area Recs. at 7 (Gov'r's Ltr., Nov.

13, 2006).

The Chief's letter is consistent with the view that the 8,260 acres were removed from the roadless inventory on the basis of a state-wide policy decision that roadless areas not overlap with ski areas. The letter explained that the Colorado roadless inventory "excluded lands within ski area permitted boundaries," and that "[t]his change was applied to the Burnt Mountain roadless area." Forest Serv. Ltr., Sept. 7, 2012. It then noted that "*[i]n addition*, changes to the area were made based on site-specific knowledge of White River National Forest personnel." *Id.* (emphasis added). The fact that site-specific knowledge was merely an "addition[al]" basis for removing the ski-area acres from the roadless inventory, and not the primary basis for doing so, further undermines Ark's claim that all 8,260 ski-area acres were removed from the inventory based on site-specific findings of degradation. Ark's suggestion the court cannot rely on the Chief's letter because it is an inadequate *post-hoc* rationalization lacks merit. Ark's filing of its lawsuit on September 5, 2012, only 19 days after the Service refused to suspend the Company's project, did not mean the letter is properly characterized as a supplemental response; the Service's official denial of the Emergency Petition by letter within 21 days of the refusal to suspend the Company's 2006 authorization is part of the Service's final decision. *Cf. Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6–7 (D.C. Cir. 2006).

Ark nonetheless contends that the Forest Service "never took a hard look," Appellants' Br. 57, at the new evidence presented in the Emergency Petition, which purported to show that the Burnt Mountain parcel "does not contain any improved roads maintained for passenger vehicles or other structures that would otherwise disqualify this area from inventory consideration," Emerg. Pet. at 8. This ignores that the Service did not deny the petition because the Burnt Mountain parcel had

been degraded by disqualifying roads or structures. Rather, the Service's reason was a policy one: Less than two weeks before Ark's petition, the 2012 Colorado Rule had removed 8,260 ski-area acres from the roadless inventory in order to accommodate "Colorado-specific concerns," *see* 2012 Colorado Rule, 77 Fed. Reg. at 39,578, and these concerns applied to the Burnt Mountain parcel. Ark does not maintain that the Service misjudged the boundary of the Snowmass permitted ski area in relation to the Improvement Project's boundary. And the record shows the Service promulgated the final rule only after considering over 300,000 comments received during the rulemaking, balancing a range of competing interests regarding "roadless area conservation" in the State, and explaining its selection of one of the proposed alternatives. 2012 Colorado Rule, 77 Fed. Reg. at 39,581. Given the recent promulgation of the final rule after extended review, the Service responded appropriately with a "brief statement" resting on the final rule's rationale.

Neither does Ark's APA challenge gain traction by characterizing the Forest Service's land boundary decision in denying the Emergency Petition as a "major federal action" subject to NEPA. *See* Appellants' Br. 10 (citing *Lands Council v. Martin*, 529 F.3d 1219, 1230–32 (9th Cir. 2008)). Ark contends that "the Service was required under federal law to conduct NEPA review to publicly disclose and analyze the inevitable impacts to this particular parcel's roadless qualities," but only *if* "the Service permanently disqualified the Burnt Mountain parcel from roadless designation" as part of the 2012 Colorado Rule. Appellants' Br. 50, 53–54. Ark's contention fails because its premise is flawed. In denying the Emergency Petition, the Service did not rely on a categorical rule that ski areas could never be designated as roadless; rather, the Chief refused to revisit a boundary purposefully drawn to exclude the Snowmass Ski Area just two weeks before, and rejected the

Emergency Petition as tardy and repetitive of Ark's unsuccessful earlier challenge. Consequently, the Service cannot be faulted for failing to conduct a NEPA analysis of a "categorical rule" that it did not adopt.

The Forest Service's refusal to suspend the Company's 2006 project authorization was also reasonable in view of the denial of Ark's "roadless" petition. The Emergency Petition requested the suspension for the express and exclusive purpose of allowing the Service "an opportunity to revisit [the Burnt Mountain parcel] issue" and "make a final determination concerning the roadlessness of this tract." Emerg. Pet. at 2, 8. In response, the Service stated that it remained "satisfied that the Burnt Mountain ['roadless' area] boundary is appropriate" and saw "no reason to revisit" its prior decision. Forest Serv. Ltr., Sept. 7, 2012. Therefore, the Service had no basis to suspend the permit for the Company's project, and its refusal to do so was "self-explanatory." 5 U.S.C. § 555(e).

Accordingly, we hold that Ark has Article III standing, and we affirm the grant of summary judgment and the denial of reconsideration because the Forest Service's denial of the Emergency Petition was not arbitrary or capricious or contrary to law, and Ark fails to show an abuse of discretion on reconsideration.