# United States Court of Appeals
## For the First Circuit

No. 14-1976

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS E. RODRÍGUEZ-MILIÁN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch, Selya and Lipez,
Circuit Judges.

Luis A. Guzmán Dupont for appellant.
Jenifer Y. Hernández-Vega, Assistant United States Attorney,
with whom Rosa Emilia Rodríguez-Vélez, United States Attorney,
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, and Francisco A. Besosa-Martínez, Assistant
United States Attorney, were on brief, for appellee.

April 19, 2016

**SELYA**, **Circuit Judge**.  A party who fails to preserve potential claims of error in the trial court usually encounters strong headwinds on appeal.  So it is here.  Concluding that the appellant's asseverational array is largely unpreserved and wholly unpersuasive, we affirm his conviction and sentence.  We nonetheless remand to allow the district court to consider a sentence reduction under a recent amendment to the sentencing guidelines.

## I.  BACKGROUND

We recite the background facts "in the light most hospitable to the verdict, consistent with record support."  United States v. Maldonado-García, 446 F.3d 227, 229 (1st Cir. 2006).  Starting in 2005, a drug-trafficking organization headed by the notorious Junior Cápsula smuggled cocaine by sea from the Dominican Republic into Puerto Rico aboard yawls specially retrofitted with secret compartments.  After law enforcement personnel seized two of the vessels, the drug ring began to consider alternative modes of transportation (including airplanes).

In June of 2009, defendant-appellant Carlos E. Rodríguez-Milián became involved with a scheme to fly drug shipments from the Dominican Republic to Puerto Rico and to ferry cash on return flights.  Shortly after this plot was hatched, the appellant purchased a small aircraft that he thereafter used to transport a leader in the drug ring from Puerto Rico to the

- 2 -

Dominican Republic. Later that summer, the appellant and a confederate, Jeffrey Núñez-Jiménez (Núñez), transported roughly $500,000 in illegal drug-sale proceeds from Puerto Rico to the Dominican Republic.

A subsequent flight by the two men in the appellant's recently-purchased airplane took place on August 22, carrying a cargo of no less than 50 kilograms of cocaine. Spotted on radar when it entered Puerto Rican airspace, their airplane aroused suspicion because it failed to communicate with anyone, flew past Borinquen Airport, and descended instead into Arecibo Airport (which was not an authorized port of entry for international air traffic). The airplane landed before any law enforcement personnel arrived to investigate. Two men (later identified as Diego Pérez and Fernando Nieves) approached the aircraft, while a third man, José Marrero-Martell, watched from a nearby automobile. Marrero-Martell testified that Junior Cápsula had told him that he (Cápsula) had delivered cocaine to the appellant and Núñez. Junior Cápsula then added that Marrero-Martell should pick up the drugs from the airport.

An airport security guard became inquisitive at the sight of all the activity around the appellant's aircraft. When the guard approached, the appellant told Pérez that he would distract the guard while the bags were unloaded. The appellant told the guard (falsely) that Pérez and Nieves had arrived by

- 3 -

parachute.  The guard then instructed the appellant not to take off until customs officials could arrive, and shortly thereafter put the appellant on the telephone with a customs agent.  The appellant suggested that the landing at Arecibo was due to electrical problems and that his real destination was Isla Grande Airport.  In the meantime, the other three men (Pérez, Nieves, and Núñez) unloaded bags filled with cocaine from the aircraft and stashed them in a waiting automobile.  The car then departed and — about 35 minutes after landing at Arecibo — the appellant and Núñez flew away before customs officials could arrive.[1]

In due season, a federal grand jury returned an indictment that targeted, among other things, the broad drug-trafficking conspiracy headed by Junior Cápsula.  One count of the indictment, however, charged the appellant with participating in a narrower conspiracy to import five or more kilograms of cocaine into the customs territory of the United States.  See 21 U.S.C. §§ 952(a), 963.  At trial, Marrero-Martell and Pérez testified for the government as cooperating witnesses.  The jury found the appellant guilty on the single count lodged against him and, on August 22, 2014, the district court sentenced him to serve a 235-month term of immurement.  This timely appeal ensued.

---

[1] No repairs to the aircraft were made (or even attempted) at Arecibo, and the jury reasonably could have found that the appellant's tale about electrical problems was a ruse.

## II. ANALYSIS

The appellant, represented on appeal by new counsel, attacks on several fronts. His claims of error can conveniently be segregated into four tranches. We address each tranche separately and then tie up a loose end.

### A. Sufficiency of the Evidence.

The appellant's flagship claim is that the government failed to prove beyond a reasonable doubt his specific intent to engage in a conspiracy to traffic narcotics. Since the appellant did not at any time move for judgment of acquittal below, see Fed. R. Crim. P. 29, we review this claim only for clear and gross injustice, see United States v. Gobbi, 471 F.3d 302, 309 (1st Cir. 2006); United States v. Greenleaf, 692 F.2d 182, 185 (1st Cir. 1982); see also Magee v. BEA Constr. Corp., 797 F.3d 88, 90 & n.2 (1st Cir. 2015). Nothing of the sort occurred here.

In considering a claim of evidentiary insufficiency, "we must take the facts in the light most hospitable to the prosecution, drawing all reasonable inferences in its favor." United States v. Hadfield, 918 F.2d 987, 996 (1st Cir. 1990). We are not at liberty to question the credibility of witnesses. See United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994). Moreover, we are constrained to recognize that "[r]eliance on indirect, as opposed to direct, evidence in a criminal case is both permissible and commonplace." United States v. Spinney, 65

F.3d 231, 234 (1st Cir. 1995).  Even with respect to a preserved challenge to the sufficiency of evidence, the verdict must stand as long as it derives support from a "plausible rendition of the record."  United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992).

To sustain a conviction for conspiracy, the government must show "beyond a reasonable doubt that a conspiracy existed and that a particular defendant agreed to participate in it, intending to commit the underlying substantive offense."  United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993).  The existence of a conspiracy, as well as a particular defendant's membership in it, may be "inferred from the defendant['s] words and actions and the interdependence of activities and persons involved."  United States v. Boylan, 898 F.2d 230, 241-42 (1st Cir. 1990).  "The government need not show that each conspirator knew of or had contact with all other members.  Nor need it show that the conspirators knew all of the details of the conspiracy or participated in every act in furtherance of the conspiracy."  United States v. Soto-Beníquez, 356 F.3d 1, 19 (1st Cir. 2003).

The conspiratorial agreement may be tacit or express and may be proved by circumstantial evidence.  See Sepulveda, 15 F.3d at 1173.  To prove a defendant's participation in a conspiracy, the government must show two types of intent: the defendant's intent to join the conspiracy and his intent to perpetrate the

- 6 -

underlying substantive offense. See United States v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir. 1989). This, of course, requires a showing that the defendant had knowledge of the underlying substantive offense and that he "both intended to join the conspiracy and intended to effectuate the objects of the conspiracy." United States v. Burgos, 703 F.3d 1, 11 (1st Cir. 2012) (quoting United States v. Dellosantos, 649 F.3d 109, 116 (1st Cir. 2011)).

The record here is more than ample to show that the appellant knowingly entered into an agreement with other miscreants to commit the underlying offense: smuggling cocaine into the United States. The jury reasonably could have found that the appellant joined members of the drug-trafficking ring, agreed to transport drugs and drug money by air between the Dominican Republic and Puerto Rico, undertook the August 22 flight after one of the coconspirators (Marrero-Martell) received instructions from the drug kingpin (Junior Cápsula), and knowingly agreed to participate in the smuggle. The appellant's eager participation in the venture is evident from his course of conduct: he financed the purchase of an airplane, flew it from the Dominican Republic to Puerto Rico, and attempted to cover up the smuggling in his dealings with both a security guard at the airport in Arecibo and a customs agent.

The appellant now contends that he was merely present, not culpably present. See Ortiz, 966 F.2d at 712 (explaining the difference). The record, however, belies this disclaimer: it makes manifest that the appellant participated knowingly at several key points in the conspiracy. A jury surely could have inferred — as this jury did — the existence of a conspiracy and the appellant's membership in it.

The appellant's fallback position is that the government never established that he knew that the bags he was transporting contained cocaine. This position is untenable: the jury reasonably could have concluded that the appellant traveled to the Dominican Republic with Núñez for the specific purpose of transporting drugs. Núñez informed Marrero-Martell that an aircraft could be used for the specific purpose of smuggling large quantities of cocaine into Puerto Rico. Núñez and the appellant received the drugs from the operation's kingpin, Junior Cápsula, and made the trip at his direction. Once in Arecibo, the appellant distracted the security guard at the airport while the cargo was unloaded, and lied to both the guard and a customs official. He then decamped without waiting for customs officials to arrive. Though it is possible that the bags contained some innocent cargo (say, cucumbers), courts and jurors are not expected to put their common sense into cold storage. Given the record evidence here, there was no clear and gross injustice in upholding a jury finding that the appellant

knew the bags contained cocaine.  Any other conclusion would blink reality.

## B.  **Prejudicial Variance.**

The appellant next asserts that a prejudicial variance occurred.[2]  Because he neglected to advance any such assertion in the district court, we review only for plain error.  See United States v. Seng Tan, 674 F.3d 103, 110-11 (1st Cir. 2012).  To clear this hurdle, an appellant must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).  There is no plain error here.

To prevail on a prejudicial variance claim, an appellant must show a material factual difference between the crime charged in the indictment and the crime proved at trial.  See United States v. Fenton, 367 F.3d 14, 18 (1st Cir. 2004).  He also must show prejudice.  See id.  Here, there was no variance.

The indictment charged both an overarching conspiracy (count 1), for which the appellant was not charged, and a narrower

_____

[2] Although the appellant also hints that there may have been a "constructive amendment" of the indictment, he never developed that argument in his brief.  Consequently, we deem any such claim waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

conspiracy (count 3), for which the appellant was charged. The appellant says that although the government charged him with the narrower conspiracy (involving the smuggling activity that took place on August 22, 2009), it only proved the broader conspiracy. We do not agree.

The evidence presented by the government and admitted against the appellant at trial pertained directly to the particular conspiracy charged against him. The government proved, step by step, each and every element of that conspiracy. The fact that some of the government's evidence also touched upon aspects of the broader conspiracy, without more, does not work a variance. See United States v. Fisher, 3 F.3d 456, 463 (1st Cir. 1993); United States v. Innamorati, 996 F.2d 456, 477-78 (1st Cir. 1993). Here, there was no "more."

In all events, a claim of prejudicial variance by definition necessitates a showing of prejudice — and in this case, there was no prejudice. As in Fisher, the appellant was, at worst, "convicted of and sentenced for a conspiracy smaller in scope and breadth than that for which he may have, in fact, been culpable." 3 F.3d at 463 n.19. Given that circumstance, any variance between the indictment and the proof could not conceivably have affected the appellant's substantial rights. See, e.g., United States v. Mangual-Santiago, 562 F.3d 411, 423 (1st Cir. 2009).

- 10 -

## C.  **Alleged Trial Errors.**

Battling on, the appellant labors to raise claims of trial error.  Because none of these claims was preserved below, our review is limited to plain error.  See Duarte, 246 F.3d at 60.

For the most part, the appellant's claims of trial error boil down to a single claim: he seeks to persuade us that the admission of certain coconspirator statements was improper.  We approach this claim mindful that a statement "made by the party's coconspirator during and in furtherance of the conspiracy" does not come within the hearsay proscription.  Fed. R. Evid. 801(d)(2)(E).  For the prosecution to engage the gears of Rule 801(d)(2)(E), however, there must be evidence that a conspiracy existed involving the declarant and the defendant.  See Bourjaily v. United States, 483 U.S. 171, 175 (1987).  Although the trial court may allow the introduction of such statements de bene, that court is charged with making a gatekeeper determination before allowing the jury to consider such evidence.  See Ortiz, 966 F.2d at 715; United States v. Petrozziello, 548 F.2d 20, 22-23 (1st Cir. 1977); see also United States v. Ciampaglia, 628 F.2d 632, 638 (1st Cir. 1980) (limning proper procedure for making what in this circuit is known as a "Petrozziello" determination).  In making such a determination, the trial court is to use a preponderance of the evidence standard.  See United States v. Angiulo, 897 F.2d 1169, 1201 (1st Cir. 1990).

Here, however, there is a rub: the appellant did not object to the admission of the coconspirators' statements, did not ask the district court to admit them de bene, and did not object to the district court's omission of a Petrozziello determination. It is common ground that a defendant's failure to object to the trial court's omission of an explicit Petrozziello determination forecloses the defendant from attacking the omission on appeal, save for plain error. See United States v. Perkins, 926 F.2d 1271, 1283 (1st Cir. 1991); Ciampaglia, 628 F.2d at 638.

Plain error is plainly absent here. The record is replete with preponderant evidence showing both the existence of the charged conspiracy and the membership in it of the appellant, Núñez, Marrero-Martell, Pérez, Nieves, and Junior Cápsula.

With respect to the admitted evidence itself, the appellant has largely waived any further argument. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). He has, with one exception, failed to identify in his brief the particular statements that he regards as problematic.

The sole statement identified by the appellant is drawn from Marrero-Martell's testimony about what Junior Cápsula purportedly said to him on August 22, 2009. The admission of Marrero-Martell's testimony about that statement was not plain error. As said, the government introduced an abundance of extrinsic evidence to show the existence of a conspiracy in which

Marrero-Martell, Junior Cápsula, and the appellant, among others, were participants. What is more, both the content and the context of Junior Cápsula's instructions to Marrero-Martell support a finding that those instructions were given during the course and in furtherance of the charged conspiracy. See United States v. Rodriguez, 525 F.3d 85, 101 (1st Cir. 2008); United States v. Marino, 277 F.3d 11, 26 (1st Cir. 2002).

There is one last claim of trial error. The appellant blithely asserts that the accumulation of errors during trial demands a new trial. See, e.g., Sepulveda, 15 F.3d at 1195-96. ("Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect."). We reject this assertion out of hand: since the appellant has failed to identify any cognizable trial errors, there is nothing to be accumulated.

### D. **Alleged Sentencing Errors.**

The appellant challenges his sentence, arguing that it is longer than that of Núñez (who accompanied him on the August 22 flight from the Dominican Republic to Puerto Rico) and that the district court did not explain the rationale for this disparity. With respect to preserved errors, our review of criminal sentences is normally for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007). That review "is bifurcated: we first determine whether the sentence imposed is procedurally reasonable

- 13 -

and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011).

We start here with the procedural dimension of the appellant's challenge. This dimension involves the district court's supposed failure to explicate its sentencing rationale. Because the appellant neglected to advance any such challenge below, our review is for plain error. See United States v. Montero-Montero, ___ F.3d ___, ___ (1st Cir. 2016) [No. 15-1405, slip op. at 3]; United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015). On plain error review, the absence of an explanation is not dispositive: the appellant also must show a likelihood that the court, but for the error, would have imposed a less severe sentence. See United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012).

We need not tarry. Here, the appellant's 235-month sentence falls at the low end of his guideline sentencing range. That fact, in itself, lightens the burden of justification. See Montero-Montero, ___ F.3d at ___ [No. 15-1405, slip op. at 4].

To be sure, the sentencing court did not make a direct comparison of the appellant's culpability with Núñez's culpability. As a procedural matter, however, it had no duty to make such a comparison. See United States v. Ayala-Vazquez, 751 F.3d 1, 30-32 (1st Cir.), cert. denied, 135 S. Ct. 467 (2014).

- 14 -

At any rate, we have cautioned that appellate courts should not "read too much into a district court's failure to respond explicitly to particular sentencing arguments." Clogston, 662 F.3d at 592. Though the explanation here is lean, the district court specifically referenced the appellant's personal history, the nature of the offense, and the goals of deterrence and punishment in imposing the sentence. The court also heard arguments from counsel on both sides regarding these issues. On this record, then, no plain error occurred. See United States v. Vargas-García, 794 F.3d 162, 166 (1st Cir. 2015).

Although we sometimes consider disparities between similarly situated codefendants under the rubric of substantive reasonableness, see, e.g., United States v. Reverol-Rivera, 778 F.3d 363, 366 (1st Cir. 2015), the appellant's remaining challenge on this ground fares no better.[3] The appellant premises this claim on the disparity between his 235-month sentence and Núñez's 120-month sentence. For sentencing purposes, however, the appellant and Núñez are not fair congeners. After all, Núñez — unlike the appellant — admitted responsibility and chose to plead guilty before trial. It is settled that a coconspirator who has elected to plead guilty is not similarly situated to a coconspirator who

---

[3] Though this challenge was not voiced below, our standard of review is uncertain. See Ruiz-Huertas, 792 F.3d at 228 & n.4. But we need not probe this point more deeply; even under abuse of discretion review, this challenge lacks force.

has elected to stand trial. See, e.g., United States v. Dávila-González, 595 F.3d 42, 50 (1st Cir. 2010). There are, moreover, other salient differences, not the least of which is that the appellant furnished and flew the aircraft that was used in the smuggle.

To say more would be pointless. We reject, without serious question, the appellant's claim that his sentence is substantively unreasonable.

### E.   A Loose End.

There is one loose end. On July 18, 2014, the Sentencing Commission approved retroactive application of Amendment 782, which lowered the offense level applicable to the offense of conviction. See USSG App. C Supp., Amend. 788 (Nov. 1, 2014). Notwithstanding that his case was then pending on appeal, the appellant moved for a sentence reduction in the district court. See 18 U.S.C. § 3582(c)(2). The court purported to grant the motion.

At the time that it acted, the district court lacked jurisdiction to enter an order reducing the appellant's sentence. See United States v. Cardoza, 790 F.3d 247, 248 (1st Cir. 2015) (per curiam); United States v. Maldonado-Rios, 790 F.3d 62, 64 (1st Cir. 2015) (per curiam). The putative sentence reduction is, therefore, a nullity. Even so, Federal Rule of Appellate Procedure 12.1 allows us to treat the district court's ineffectual sentence

- 16 -

reduction order as an indicative notice that, on remand, the district court is prepared to grant such a reduction. See Cardoza, 790 F.3d at 248; Maldonado-Rios, 790 F.3d at 64-65. We therefore remand so that the district court, once its jurisdiction has reattached, may consider reducing the sentence. We caution, however, that should the court continue to believe that Amendment 782 paves the way for a reduced sentence, it "'shall substitute' the amended Guidelines range for the initial range 'and shall leave all other guideline application decisions unaffected.'" Dillon v. United States, 560 U.S. 817, 831 (2010) (quoting USSG §1B1.10(b)(1), p.s.).

## III.  CONCLUSION

We need go no further.  We strike the district court's improvidently entered sentence reduction order and affirm the judgment as originally entered by the district court.  We remand, however, for the limited purpose of permitting the district court to consider anew the appellant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 782.

**So Ordered.**