# United States Court of Appeals
## For the First Circuit

No. 12-2458

UNITED STATES OF AMERICA,

Appellee,

v.

SEAMUS MAGUIRE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Howard, Selya and Thompson,

Circuit Judges.

Peter J. Cyr on brief for appellant.
Thomas E. Delahanty II, United States Attorney, and Renée M. Bunker, Assistant United States Attorney, on brief for appellee.

April 7, 2014

**SELYA, Circuit Judge.** Defendant-appellant Seamus Maguire pleaded guilty to a charge of possession of marijuana with intent to distribute. The district court imposed a 60-month incarcerative sentence — the maximum allowed under the statute of conviction. See 21 U.S.C. § 841(b)(1)(D). Dismayed by the length of his sentence, the appellant concocts a carefully contrived casserole of claims of error. Finding this repast indigestible, we affirm.

## I. BACKGROUND

"Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009). On the evening of June 16, 2011, state and local law enforcement officers detained the appellant and administered Miranda rights, see Miranda v. Arizona, 384 U.S. 436, 471 (1966), after he was seen selling drugs in Union, Maine. The appellant admitted that (in the surveilled sale) he had sold 20 pounds of marijuana for roughly $29,000. He likewise admitted that he recently had acquired around 600 pounds of marijuana and sold 400 to 450 pounds of it to a customer in New Hampshire. Moreover, the appellant acknowledged that he had 80 to 100 pounds of marijuana in a stash house in Portland, Maine, and he offered to lead the officers to it.

The officers accepted the appellant's invitation. En route, the appellant rethought his original estimate and told the officers that the amount of marijuana at the stash house was only 40 to 50 pounds. The officers retrieved the marijuana, which weighed 42.2 pounds.

On September 14, 2011, a federal grand jury sitting in the District of Maine indicted the appellant for, inter alia, possession of marijuana with intent to distribute.[1] See 21 U.S.C. § 841(a)(1). The indictment contemplated that 21 U.S.C. § 841(b)(1)(D), which stipulates a maximum sentence of 5 years for distribution of up to 50 kilograms of marijuana, would apply.

The appellant moved to suppress the statements that he had made following his arrest. At the suppression hearing before a magistrate judge, the appellant testified that he had twice requested an attorney during the stop, only to be ignored. He further testified that he had cooperated in part because an officer had threatened to arrest everyone he knew if he did not. Four law enforcement officers testified to the contrary.

The magistrate judge found that the appellant had neither asked for an attorney nor been subjected to threats. After reviewing the credible evidence, the magistrate judge recommended

---

[1] Although the indictment originally included additional counts for distribution of marijuana and for forfeiture, those counts were voluntarily dismissed and do not figure in this appeal.

against suppression. The district judge accepted the magistrate judge's findings and recommendations.[2]

After the denial of his motion to suppress, the appellant entered a guilty plea. The change-of-plea hearing was uncharacteristic: the district court found the appellant's demeanor disrespectful and admonished him twice before eventually accepting the change of plea.

The district court convened the disposition hearing on November 19, 2012. The court set the base offense level (BOL) at 26, attributing 462.2 pounds (209.65 kilograms) of marijuana to the appellant. The court then found that the appellant had perjured himself at the suppression hearing and adjusted the BOL upward by two levels for obstruction of justice. See USSG §3C1.1. The court then declined to credit the appellant for acceptance of responsibility, see id. §3E1.1, noting both the appellant's perjurious testimony and his flippancy during the change-of-plea colloquy. Finally, the court placed the appellant in criminal history category I.

These calculations yielded a guideline sentencing range (GSR) of 78 to 97 months. However, the maximum sentence allowable under the statute of conviction was only 60 months. See 21 U.S.C. § 841(b)(1)(D). When the bottom of a properly calculated GSR

---

[2] For ease in exposition, we adopt an institutional perspective and hereinafter refrain from distinguishing between the district judge and the magistrate judge.

-4-

exceeds the maximum sentence allowable under the statute of conviction, the latter becomes the guideline sentence. See USSG §5G1.1(a). Cognizant of this principle, the court imposed a 60-month incarcerative term. This timely appeal followed.

## II. ANALYSIS

The appellant assigns error to the sentencing court's drug-quantity calculation, its obstruction-of-justice enhancement, its refusal to reduce the offense level for acceptance of responsibility, its eschewal of either a downward variance or departure, and its choice of a 60-month sentence. We address these assignments of error sequentially.

### A. Drug Quantity.

In drug-trafficking cases, the amount of drugs attributable to a defendant is an important datum, which bears heavily on his likely sentence. Here, the district court found the appellant responsible for 462.2 pounds (209.65 kilograms) of marijuana. It predicated this finding on the appellant's own statements to the police, summing the weights that the appellant admitted to selling on the day of the arrest (20 pounds), the marijuana seized at the stash house (42.2 pounds), and his low-end estimate of what he had sold to the New Hampshire customer (400 pounds).

We review a sentencing court's factual findings, including its findings as to drug quantity, for clear error. See

United States v. Platte, 577 F.3d 387, 392 (1st Cir. 2009). Absent an error of law — and none is apparent here — a sentencing court does not clearly err in making a drug-quantity determination "so long as the approximation represents a reasoned estimate of the actual quantity." United States v. Cintrón-Echautegui, 604 F.3d 1, 6-7 (1st Cir. 2010).

The appellant's challenge to the district court's drug-quantity determination is a bit of a paradox: he faults the court for its reliance on the statements that he himself freely made when he was arrested. Embracing language from one of our prior decisions, the appellant says his account was "too thin or too improbable or too likely to be mere boasting" to warrant the court's imprimatur. United States v. Marquez, 699 F.3d 556, 560 (1st Cir. 2012). In support, the appellant avers that his original over-estimation of the amount of marijuana at the stash house, coupled with his fear of harm to his family, indicate that his statements were unreliable.

We start with the unremarkable proposition that a defendant's voluntary statements, made after receiving Miranda warnings, can be used against him and that, in the ordinary course, such statements can constitute strong evidence of his guilt. See, e.g., Miranda, 384 U.S. at 469. This case falls within that unremarkable proposition, not within any long-odds exception to it. The court below, which saw and heard the appellant and the other

-6-

witnesses at first hand, concluded that there were enough badges of reliability to render the appellant's day-of-arrest estimates trustworthy.

This conclusion is entirely supportable.  For one thing, the appellant made his statements _after_ he had been arrested, thus minimizing any incentive to exaggerate.  For another thing, the appellant apparently cooperated willingly with the officers.  There were, the court found, no threats of harm to the appellant's family.  Finally, the pricing structure of the appellant's avowed sale to his New Hampshire customer (400 to 450 pounds of marijuana for around $600,000) corresponded to the pricing structure of his surveilled sale (20 pounds of marijuana for roughly $29,000).

To say more on this topic would be pointless.  The district court's drug-quantity determination was not clearly erroneous but, rather, echoed the appellant's own statements — statements that bore the hallmarks of reliability.  Consequently, the appellant is hoist with his own petard.

## B.  **Obstruction of Justice.**

We turn next to the enhancement for obstruction of justice.  Once again, our review is for clear error.  _United States_ v. _Akitoye_, 923 F.2d 221, 229 (1st Cir. 1991).

The sentencing guidelines empower the district court to enhance a defendant's offense level by two levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or

impede, the administration of justice." USSG §3C1.1. Such an enhancement may be based on a finding that the defendant committed perjury during the course of the case. See Akitoye, 923 F.2d at 228. But an enhancement for obstruction of justice based on perjury requires something more than a simple asymmetry in the testimony in the case. See id. at 228-29. For a sentencing court to impose such an obstruction-of-justice enhancement, the court must independently find by a fair preponderance of the evidence that the defendant deliberately lied about a material matter. See United States v. Shinderman, 515 F.3d 5, 19 (1st Cir. 2008).

The obstruction-of-justice enhancement in this case was based on the appellant's testimony at the suppression hearing. But the appellant contends that the district court never found as a fact that he had willfully lied. Elevating semantics to an art form, the appellant suggests instead that the court merely found the officers' contradictory testimony more credible.

The record belies this suggestion. The court carefully considered the appellant's tale of ominous threats and ignored entreaties for counsel. The court rejected this tale as apocryphal. In doing so, the court remarked the contradictory and implausible nature of the appellant's testimony and found that he had deliberately perjured himself.

We need not tarry. The appellant's testimony about invoking his right to an attorney and being threatened by the

-8-

officers was flatly contradicted by four other witnesses. The court's finding that the appellant prevaricated, as opposed to misunderstanding, is hard to fault. After all, there is very little room for ambiguity: the requests for counsel and the threats were either made or they were not. In these circumstances, the perjury finding is rock-solid. See United States v. Gobbi, 471 F.3d 302, 314-15 (1st Cir. 2006) (upholding perjury finding "[g]iving due heed to both the trial judge's unique coign of vantage and the deferential standard of review").

## C. Acceptance of Responsibility.

The appellant's lament with respect to acceptance of responsibility is two-fold. First, he asseverates that the sentencing court's obstruction-of-justice enhancement was unwarranted and that, therefore, the court's epibolic refusal to credit him for acceptance of responsibility was erroneous. This asseveration is simply a rehashing of a claim previously rejected, see supra Part II.B, and falls of its own weight.

The second branch of the appellant's challenge starts with the valid premise that even if a defendant's sentence is enhanced for obstruction of justice, he still may receive a downward adjustment for acceptance of responsibility. Although practice has proven such largesse to be hen's-teeth rare, the appellant nonetheless insists that he qualifies for it.

The baseline rule, of course, is that "[c]onduct resulting in an enhancement [for obstruction of justice] ordinarily indicates that the defendant has not accepted responsibility." USSG §3E1.1, comment. (n.4). Yet the sentencing guidelines explicitly confirm that there may be "extraordinary cases" in which adjustments for both obstruction of justice and acceptance of responsibility can coexist. Id. In such instances, the defendant has the burden of proving that an adjustment for acceptance of responsibility is warranted. See United States v. Gonzales, 12 F.3d 298, 300 (1st Cir. 1993). A district court's denial of such a claim is reviewed for clear error. See id.

The appellant points to a host of factors that, in his view, make his case extraordinary. These include his on-the-spot admission of his role in the surveilled drug sale, his divulgement of the existence and location of the stash house, his consent to the search of that structure and to the seizure of contraband from it, his guilty plea, his compliance with the terms of his pretrial release, and his avowals of contrition. These factors, he exhorts, merit a reduction for acceptance of responsibility.

We doubt that these factors, taken in cumulation, are sufficient to make the appellant's case extraordinary and, thus, to overcome the secondary effect of the warrantable finding that he had obstructed justice. But we need not go so far. We are not a nisi prius court, and the enumerated factors surely do not pack a

-10-

sufficient punch to render the sentencing court's adverse assessment of them clearly erroneous.[3] Cf. United States v. Royer, 895 F.2d 28, 29 (1st Cir. 1990) ("Whether a defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility is a fact-dominated issue, and . . . will not be overturned unless clearly erroneous." (internal quotation marks omitted)).

### D. **Variance/Departure.**

Under the advisory guidelines, discretionary refusals to vary or depart are open to reasonableness review in accordance with an abuse of discretion standard. See United States v. Anon. Defendant, 629 F.3d 68, 74 (1st Cir. 2010); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).

In this regard, the appellant reproves the district court for failing to make an individualized assessment of the case as required by Gall v. United States, 552 U.S. 38, 49-50 (2007). In his view, such an assessment would have prompted the court to vary or depart downward based on his ill health (including a diagnosis

---

[3] The district court's decision not to reduce the appellant's offense level for acceptance of responsibility did not rest solely on the secondary effect of its obstruction-of-justice finding. Given what we already have said, however, we need not catalog the court's other findings.

-11-

of Burkitt's lymphoma and past surgeries).[4]  See 18 U.S.C. § 3553(a); USSG §1B1.1(c).

While health is a relevant factor in determining whether either a variance or a departure is indicated, the court below did not overlook this factor.  To the contrary, the court specifically acknowledged both the appellant's medical condition and the seriousness of that condition.  The court determined, however, that there was no evidence that the federal prison system could not deal appropriately with the appellant's medical problems.  In a wry aside, the court noted (correctly, we think) that the appellant's large-scale marijuana operation did not seem to have been impaired by his failing health.

We discern no hint of unreasonableness.  The record makes manifest that the district court weighed all of the relevant factors and explained its denial of a downward departure in a series of well-reasoned statements.  There was no abuse of discretion.

Variances — like departures — are discretionary.  See United States v. Caraballo, 552 F.3d 6, 11 (1st Cir. 2008).  A district court's decision to eschew a variance is reviewed deferentially, and that deference is especially great where, as here, the defendant is complaining about a sentence that is below

_____

[4] In arguing for a downward variance or departure, the appellant pays scant heed to the fact that, due to a statutory cap, the sentence that he received was well below the bottom of the GSR.

the bottom of a properly calculated GSR.  See United States v. Floyd, 740 F.3d 22, 39-40 (1st Cir. 2014).

Refined to bare essence, the appellant's claim of entitlement to a variance is nothing more than a plaint that the sentencing court attached too little weight to factors such as his medical condition.  But deciding how much weight should be given to particular factors in a specific case is, within broad limits, the core function of a sentencing court.  Here, the district court did not exceed those limits.  It stated explicitly that it had considered all of the relevant factors, including those enumerated in 18 U.S.C. § 3553(a).  The court expressly referenced a number of specific factors, including the appellant's medical condition.

In deciding not to vary downward more than was required by the architecture of the statute of conviction, the court reached a sensible result and articulated a plausible rationale in support of that result.  See United States v. Carrasco-de-Jesús, 589 F.3d 22, 30 (1st Cir. 2009).  The court's denial of a further downward variance was, therefore, comfortably within the scope of its discretion.

### E.  Length of Term.

In mounting his final argument, the appellant states only that the sentence he received was "improper."  This naked conclusion is insufficient to put the reasonableness of his sentence into play.  "It is not enough merely to mention a possible

argument in the most skeletal way, leaving the court to do counsel's work."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we affirm the appellant's sentence.


**Affirmed.**