# United States Court of Appeals
## For the First Circuit

No. 15-2205

UNITED STATES OF AMERICA,

Appellee,

v.

RYAN DEMERS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Thompson, Circuit Judges.

Stanley W. Norkunas on brief for appellant.
Emily Gray Rice, United States Attorney, and Seth R. Aframe,
Assistant United States Attorney, on brief for appellee.

November 16, 2016

**SELYA**, **Circuit Judge**.  Defendant-appellant Ryan Demers asserts both that the sentencing court made an erroneous drug-quantity determination and that, in all events, the sentence imposed was substantively unreasonable.  After careful consideration, we affirm the appellant's sentence.

## I.  BACKGROUND

Because this appeal follows a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing."  United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

On August 7, 2014, law enforcement officers initiated surveillance of the appellant as part of an ongoing investigation into the illegal distribution of oxycodone pills in and around Manchester, New Hampshire by José Nuñez, Jennifer Nuñez, and Johanna Nuñez (collectively the Nuñez consortium), as well as Samuel Garcia.  The surveillance led to the appellant's arrest on September 2, 2014.  After waiving his Miranda rights, see Miranda v. Arizona, 384 U.S. 436, 444-45 (1966), the appellant confessed to illegally purchasing pills from the Nuñez consortium, Garcia, and another vendor named William Alba for roughly two years.  The appellant stated that he recently had been purchasing around 100 to 200 pills every other day, though he originally had purchased

smaller quantities.  He explained in some detail the purchasing process and price points involved.

Garcia was also apprehended.  He told the authorities that he had supplied the appellant with oxycodone for approximately 12 to 18 months before the appellant's arrest.  He recalled that the appellant had at first bought smaller amounts, but increased his purchases to around 400 or 500 pills per week after he established his own customer base.

Johanna Nuñez, also in custody, stated that "Brian" (reasonably believed to be the appellant) was one of her biggest customers.  She recalled supplying him with 80 to 100 pills at a crack.  In addition, Alba identified the appellant as a person to whom José Nuñez regularly sold wholesale batches of pills.

On September 17, 2014, a federal grand jury sitting in the District of New Hampshire returned a two-count indictment, charging the appellant — and only the appellant — with conspiracy to distribute a controlled substance (oxycodone) and distribution of that controlled substance.[1]  See 21 U.S.C. §§ 841(a)(1), 846. After some procedural maneuvering (not relevant here), the appellant entered a straight guilty plea to both counts.

---

[1] On the same date, the grand jury returned two other indictments against a total of seven individuals for their purported involvement in oxycodone-distribution conspiracies.  The appellant was not named as a defendant in either of these indictments.

The PSI Report set the appellant's base offense level at 32 premised on a finding that he had distributed approximately 200 30-milligram oxycodone pills per week for a period of 18 months. See USSG §2D1.1(c)(4) (Drug Quantity Table). The appellant objected to this drug-quantity calculation, beseeching the court to shorten the time frame to 12 months and reduce the weekly allotment of pills to reflect pills purchased for personal consumption.[2]

The sentencing court convened the disposition hearing on September 22, 2015. It rejected the appellant's request to trim the time frame for the drug-quantity calculation from 18 months to 12 months, citing the appellant's own admission that he had been purchasing oxycodone for roughly two years. The court then stated that it was unpersuaded that the appellant was "only trafficking to feed his own habit." Even so, the court took account of the appellant's personal use of oxycodone by reducing his base offense level from 32 to 30.

After some further offsets (not relevant here), the court set the appellant's total offense level at 25, and placed him in Criminal History Category I. This produced a guideline

---

[2] Following his arrest, the appellant told the authorities that he himself had become addicted to oxycodone. He estimated that, at the time of his arrest, he was using approximately 15 to 25 pills per day and that his girlfriend was using approximately five pills per day.

sentencing range (GSR) of 57 to 71 months. The appellant argued for a downwardly variant sentence of 28 months.

The government objected, pointing to the large volumes of drugs trafficked by the appellant. The government added that New Hampshire's serious opiate problem warranted particularly strong deterrence (both individual and general) in the circumstances of this case.

The district court concluded that the amount of drugs involved in the offenses of conviction was simply too great to warrant the requested variance. Instead, it imposed a bottom-of-the-range sentence: a 57-month term of immurement for each count, to be served concurrently. This timely appeal ensued.

## II.  ANALYSIS

As a general matter, we review the imposition of a sentence for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). The process is bifurcated. We first determine whether the sentence imposed is procedurally reasonable (that is, free from reversible error in its procedural aspects) and then determine whether it is substantively reasonable. See Gall, 552 U.S. at 51. Within this structure, we review a sentencing court's factual findings for clear error and its interpretation and application of the guidelines de novo. See United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011). The entire process "is characterized by

a frank recognition of the substantial discretion vested in a sentencing court." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013).

## A. Drug Quantity.

We begin with the appellant's attack on the procedural reasonableness of his sentence. Our starting point is uncontroversial: in order to achieve procedural reasonableness, a sentencing court must correctly calculate the GSR. See United States v. Gobbi, 471 F.3d 302, 313 n.7 (1st Cir. 2006).

"In drug-trafficking cases under the sentencing guidelines, sentences are largely quantity-driven." United States v. Sepulveda, 15 F.3d 1161, 1196-97 (1st Cir. 1993). Here, the appellant's procedural plaint is focused on the sentencing court's drug-quantity calculation. We review that calculation for clear error and will disturb it only if, based "on the whole of the record, we form a strong, unyielding belief that a mistake has been made." Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990).

When assessing drug quantity, a sentencing court is tasked with making a reasonable approximation of the weight of the controlled substance(s) for which the defendant should be held responsible. See USSG §2D1.1, cmt. n.5. This approximation must be based on an individualized determination concerning the quantity of drugs attributable to, or reasonably foreseeable by,

the defendant. See United States v. Cintrón-Echautegui, 604 F.3d 1, 5 (1st Cir. 2010). We do not use the word approximation casually: the sentencing court's drug-quantity determination "need not be precise to the point of pedantry." United States v. Platte, 577 F.3d 387, 392 (1st Cir. 2009).

For sentencing purposes, quantities of controlled substances not specifically referenced in the Drug Quantity Table — such as oxycodone — must be converted to their marihuana equivalent. See USSG §2D1.1, cmt. n.8(A)(i). The court below set the appellant's base offense level at 30. That base offense level holds a defendant responsible for at least 1,000 but less than 3,000 kilograms of marihuana. See id. §2D1.1(c)(5). The Drug Equivalency Table dictates that one gram of "actual" oxycodone equates to 6,700 grams of marijuana, id. §2D1.1, cmt. n.8(D), so an offense level of 30 corresponds to at least 149 but less than 447 grams of oxycodone. With respect to the appellant's wares, each oxycodone pill was 30 milligrams in weight. Extrapolating from these figures, then, the sentencing court held the appellant responsible for at least 4,967 pills (149 grams equals 149,000 milligrams, which — when divided into 30-milligram pills — equals approximately 4,967 pills). Using an 18-month time line, the court held the appellant responsible for at least 70 pills per week for 18 months.

The appellant launches a three-pronged assault on this calculation. First, he suggests that the sentencing court failed to make an individualized determination. Second, he challenges the use of an 18-month time line. Third, he brands the calculation as erroneous because it did not exclude pills that he used personally. We address these remonstrances sequentially.

To begin, we reject the appellant's suggestion that the sentencing court did not make an individualized determination. He seems to argue that because he was not charged as a participant in the same conspiracy as any of his vendors, see supra note 1, their actions should not be imputed to him. But this argument rests on a false premise: the district court's calculations all zeroed in on the appellant's own purchases. The court did not attribute to the appellant any sales made by his vendors (the Nuñez consortium, Garcia, or Alba) to third partners but, rather, limited its consideration to sales made to the appellant himself.

The appellant's challenge to the sentencing court's use of an 18-month time line is equally groundless. The appellant argues that although he admitted to purchasing oxycodone for a period of about two years, he only engaged in distributing the drugs for a much shorter (but unspecified) period. This argument is plucked out of thin air: nothing other than the appellant's

ipse dixit supports it.[3]  When faced with conflicting facts relating to drug quantity, a district court is at liberty to make judgments about credibility and reliability.  See Platte, 577 F.3d at 393.  So it is here: the court supportably chose to give particular credence to the appellant's own estimate of the period of his involvement[4] — an estimate made to law enforcement officers shortly after the appellant was detained and under circumstances that gave him every reason not to exaggerate the length of his involvement in the distribution of drugs.  See United States v. Maguire, 752 F.3d 1, 5 (1st Cir. 2014).

The appellant rejoins that his addiction could have affected his memory, causing him to give inaccurate statements to the police.  On this record, though, that possibility is purely speculative.  Within wide limits — not approached here — it is for

---

[3] To be sure, the appellant points to Garcia's statement that he only recalls the appellant being a customer for around 12 to 18 months.  Garcia's estimate, however, encompasses the sentencing court's 18-month time line.  And in any event, the court did not clearly err in weighing the appellant's own statements more heavily than Garcia's.  After all, when there are multiple plausible views of the circumstances, a sentencing court's selection among those alternatives cannot be clearly erroneous.  See United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990).

[4] Indeed, the court limited its drug-quantity determination to a period (18 months) that was shorter than the period originally identified by the appellant (2 years).  This circumspect approach was consistent with our admonition that, in estimating drug quantities, it is often wise for a sentencing court "to err on the side of caution."  United States v. Sklar, 920 F.2d 107, 113 (1st Cir. 1990) (quoting United States v. Walton, 908 F.2d 1289, 1302 (6th Cir. 1990)).

the sentencing court, not the court of appeals, to sift through the possibilities and develop a reasonable approximation of drug quantity.  See id.

The appellant's last line of attack posits that the sentencing court's drug-quantity determination does not pass muster because it failed to exclude pills that the appellant himself consumed.  This line of attack misfires: when — as in this case — the evidence shows that the defendant was a member of a drug-trafficking conspiracy, his "purchases for personal use are relevant in determining the quantity of drugs that [he] knew were distributed by the conspiracy."  United States v. Innamorati, 996 F.2d 456, 492 (1st Cir. 1993); accord United States v. Marks, 365 F.3d 101, 105-06 (1st Cir. 2004) (holding that sentencing court was not required to deduct amount of drugs defendant personally consumed because each pill "was acquired with the intent that it would or could be distributed").

In an effort to deflect the force of these precedents, the appellant insists that, in actuality, he was only part of "a conspiracy of one."  To support this thesis, he notes out that he was the only person charged in this particular indictment.  From that fact he reasons that he was the only person involved with this specific conspiracy.  Because his suppliers were charged with being members of separate conspiracies, see supra note 1, he

- 10 -

submits that he should not be considered to have been in a conspiracy with any of them.

This is smoke and mirrors. The prosecution's charging decisions vis-à-vis the appellant's vendors do not in any way insulate the appellant. The appellant himself was charged with participating in a conspiracy with others to distribute oxycodone;[5] he pleaded guilty to that charge; and the record evidence furnishes an unarguable factual basis for his plea. Under these circumstances, the appellant's "conspiracy of one" claim is untenable. See United States v. Padilla-Galarza, 351 F.3d 594, 598 (1st Cir. 2003) (holding that a defendant is normally bound by the facts admitted at the time of his guilty plea).

It is worth noting that, at sentencing, the government sought to hold the appellant responsible for 10,400 oxycodone pills. The district court, though, settled upon a drug quantity of less than half that amount. The court proceeded to adjust the appellant's offense level accordingly. As we read the record, no hint of error — let alone any hint of clear error — mars the district court's relatively conservative drug-quantity determination.

---

[5] Specifically, the indictment to which the appellant pleaded charged him with "conspir[ing] . . . with persons known and unknown to the Grand Jury . . ."

- 11 -

## B.  Substantive Reasonableness.

This brings us to the appellant's challenge to the substantive reasonableness of his sentence.  Because this challenge is made for the first time on appeal, it is arguable whether our review is for abuse of discretion or for plain error. See United States v. Pérez, 819 F.3d 541, 547 (1st Cir. 2016); United States v. Ruiz-Huertas, 792 F.3d 223, 228 & n.4 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015).  Here, however, all roads lead to Rome: whichever standard of review obtains, the sentence withstands the appellant's challenge.  Thus, instead of struggling to resolve the thorny question surrounding the standard of review, we assume, favorably to the appellant, that review is for abuse of discretion.

A sentence will survive a challenge to its substantive reasonableness as long as it rests on a "plausible sentencing rationale" and reflects a "defensible result."  Martin, 520 F.3d at 96.  In applying this test, we remain mindful that "there is not a single reasonable sentence but, rather, a range of reasonable sentences."  Id. at 92.

Here, the sentencing court articulated a plausible rationale for the sentence.  Among other things, the court considered the need for condign punishment, the nature and circumstances of the offenses, specific deterrence, respect for the law, and public protection.  See 18 U.S.C. § 3553(a).  The

- 12 -

court noted that it had adjusted the appellant's base offense level downward and stated that "[t]he [oxycodone] quantities involved in this case are simply too great to justify [both] the total offense level adjustment made by the Court and a substantial variance."

The result, too, is easily defensible. A challenge to the substantive reasonableness of a sentence is particularly unpromising when the sentence imposed comes within the confines of a properly calculated GSR. See United States v. Vega-Salgado, 769 F.3d 100, 105 (1st Cir. 2014). That is particularly true where, as here, the sentence is at the nadir of the range. See United States v. Rodríguez-Milián, 820 F.3d 26, 35 (1st Cir.), cert. denied, 580 U.S. ___ [No. 15-9799] (Oct. 3, 2016).

The appellant's only substantial counter-argument is that the sentence imposed on Johanna Nuñez (one of his suppliers) was six months shorter than his.[6] As we explain below, this counter-argument is unconvincing.

We recognize, of course, that in fashioning a sentence a court must consider "the need to avoid unwarranted sentence

---

[6] The appellant's brief also attempts to sketch an argument predicated on changing societal and political views concerning mass incarceration and drug addiction. He appears to argue that future legislation, currently under consideration, might yield a gentler sentence in a case like his. Regardless of the desirability of such future legislation — a matter on which we take no view — this argument is without force. We must decide this appeal on the basis of the law as it stands, not on the basis of the law as it might someday be.

disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Congress intended this provision, though, primarily to eliminate national sentencing disparities rather than disparities among coconspirators. See Martin, 520 F.3d at 94. Accordingly, we have held that a defendant is not entitled to a reduced sentence simply because his accomplices or coconspirators received such sentences. See United States v. Marceau, 554 F.3d 24, 33-34 (1st Cir. 2009).

Still, legitimate concerns may arise if similarly situated coconspirators or codefendants receive inexplicably disparate sentences. See id. But such a sentencing disparity claim may easily be repulsed if material differences between the defendant and the proposed comparator suffice to explain the divergence. See Rodríguez-Milián, 820 F.3d at 35; United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015); United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005).

In the case at hand, the sentencing court explicitly acknowledged the "need to avoid unwarranted sentence disparit[ies]." It then noted that, "after reading the [PSI Report] and listening to the presentation of the parties," it "roughly equate[d] the defendant's conduct with that conduct of . . . Johanna [Nuñez]." Mindful that the appellant was not only a customer of Johanna Nuñez but also had customers of his own, the court calculated identical guideline ranges for the appellant and

- 14 -

Johanna Nuñez.  There is, however, a compelling explanation for the slightly reduced sentence in Nuñez's case: she received a one-level departure under USSG §5H1.6 based on her family ties and responsibilities — a departure that the appellant did not seek and for which he was not eligible.  Given this material difference, the two individuals were not similarly situated and, thus, the claim of sentencing disparity founders.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, the sentence is


**Affirmed.**