# United States Court of Appeals
## For the First Circuit

No. 21-1507

UNITED STATES OF AMERICA,

Appellee,

v.

ELIEZER ROSARIO-RAMOS,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]


Before

Barron, Chief Judge,
Kayatta and Aframe, Circuit Judges.


José R. Olmo-Rodríguez for appellant.
Gregory B. Conner, Assistant U.S. Attorney, with whom W.
Stephen Muldrow, U.S. Attorney, and Mariana E. Bauzá-Almonte,
Assistant U.S. Attorney, Chief, Appellate Division, were on brief,
for appellee.


May 28, 2025

**KAYATTA**, <u>Circuit Judge</u>.  After assaulting and robbing an elderly woman, Eliezer Rosario-Ramos and his brother were indicted for carjacking resulting in serious bodily injury and bank larceny. Rosario-Ramos pled guilty to the carjacking offense and proposed an upwardly variant sentence of fifteen years.  Citing, among other considerations, the brutal nature of the attack and the death of the victim Zulma Lebrón-Serrano soon after, the district court sentenced Rosario-Ramos to twenty-three years.  Rosario-Ramos now appeals, asserting a host of procedural and substantive defects with his sentence.  We affirm.

## I.

In August 2018, Rosario-Ramos and his grandfather were at the home of seventy-seven-year-old Lebrón-Serrano to perform some paid work.  During the job, Lebrón-Serrano gave Rosario-Ramos her debit card and personal identification number (PIN) to buy himself and his grandfather breakfast.  When purchasing the food, Rosario-Ramos ran Lebrón-Serrano's account balance, saw that it totaled over $18,000, and decided to rob her.

Rosario-Ramos recruited his brother Orlando Martínez-Ramos to participate in the robbery.  On the evening of August 15, 2018, the two brothers broke into Lebrón-Serrano's home, blindfolded and gagged her, beat her with a frying pan, and stole her money, some of her valuables, and her car.  They then went on an extended shopping spree before being arrested by the police for

- 2 -

driving a stolen vehicle. Nine days after the attack, Lebrón-Serrano died. According to the medical autopsy report, the causes of her death were acute pulmonary edema, atherosclerotic and hypertensive cardiac disease, uncontrolled arterial hypertension, and uncontrolled diabetes mellitus. The autopsy report also lists facial and bodily trauma as "contributory" factors.

The following month, a federal grand jury returned a two-count indictment charging carjacking resulting in serious bodily injury and bank larceny. Rosario-Ramos pled guilty to the carjacking offense. The parties stipulated that the appropriate offense level for Rosario-Ramos translated to a sentencing range under the U.S. Federal Sentencing Guidelines of 11.25 to 14 years. But as part of his plea deal, Rosario-Ramos agreed that an upward variance was appropriate "[a]fter due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a) and the victim's death within nine days of the carjacking and attack." Rosario-Ramos proposed a sentence of fifteen years, and the government proposed a sentence of sixteen years.

The U.S. Probation Office issued a presentence investigation report (PSR), in which it concluded that the § 2B3.1(c)(1) murder cross-reference should apply, thereby increasing the Guidelines-recommended sentence to life imprisonment. See U.S.S.G. §§ 2B3.1(c)(1), 2A1.1. But recognizing that the maximum term of imprisonment for carjacking

resulting in serious bodily injury is twenty-five years, see 18 U.S.C. § 2119(2), the Probation Office recommended a sentence of twenty-five years. In his written response, Rosario-Ramos contested, among other things, the Probation Office's conclusion that the murder cross-reference should apply.

At sentencing, the district court declined to apply the murder cross-reference, citing the government's stance that it would be "difficult to establish a . . . direct causal relationship between the beating and [Lebrón-Serrano's death]." The district court noted, however, that the autopsy report made it "clear that the assault, and robbery, and the beating of the victim had direct consequences and exacerbated what already was a chronic condition." The district court found that the attack carried out by Rosario-Ramos and his brother contributed to Lebrón-Serrano's death. Thus, the court sentenced Rosario-Ramos to twenty-three years of imprisonment.

Rosario-Ramos now appeals. He argues that the district court impermissibly relied during sentencing on the assumption that Rosario-Ramos's attack on Lebrón-Serrano contributed to her death; that the district court impermissibly imposed an upward variance based on aggravating factors already contemplated by the Guidelines; and that his sentence is substantively unreasonable because it is substantially higher than his brother's and exceeds

both the Guidelines sentencing range and the already upwardly variant sentences put forth by both parties.[1]

We address these arguments seriatim and conclude that Rosario-Ramos's sentence is procedurally and substantively sound. As such, we affirm the district court's judgment.

**II.**

Appellate review of sentencing challenges "involves a two-step pavane." United States v. Rivera-Morales, 961 F.3d 1, 15 (1st Cir. 2020). First, we evaluate the procedural soundness of the sentence; if we find no procedural error, we go on to weigh the sentence's substantive reasonableness. Id. "A sentence is procedurally sound so long as the district court did not commit a procedural error in arriving at the sentence." United States v. Rivera-Moreno, 613 F.3d 1, 8 (1st Cir. 2010); see also Gall v. United States, 552 U.S. 38, 51 (2007) (listing examples of procedural errors). And a sentence is substantively reasonable so long as it reflects "a plausible sentencing rationale and a defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).

---

[1] Rosario-Ramos also contends that his sentence is so excessive as to constitute cruel and unusual punishment in violation of the Eighth Amendment. But this challenge consists of a single conclusory sentence. As such, we deem it waived for underdevelopment and do not consider it further. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

**A.**

We first address Rosario-Ramos's contention that his sentence is procedurally unfair because the district court improperly determined that the attack causally contributed to Lebrón-Serrano's death. We review the district court's rejection of this preserved objection for abuse of discretion. See United States v. Vargas-Martinez, 15 F.4th 91, 98 (1st Cir. 2021). Within the abuse-of-discretion framework, "we review a district court's factual findings for clear error." United States v. Vélez-Soto, 804 F.3d 75, 77 (1st Cir. 2015).

In formulating Rosario-Ramos's sentence, the district court found that the robbery and beating contributed to Lebrón-Serrano's death nine days after the assault. In so finding, the district court relied, in part, on the autopsy report's listing of facial and bodily trauma as "contributory" factors to the death.

Rosario-Ramos claims this reliance was error. He points to a document published on the website of the U.S. Centers for Disease Control and Prevention (CDC) addressing the use and completion of death reporting. See Nat'l Ctr. for Health Stat., U.S. Ctrs. for Disease Control & Prevention, Medical Examiners' and Coroners' Handbook on Death Registration and Fetal Death Reporting (2003), https://perma.cc/3G4Z-ETP4. Unhelpfully to Rosario-Ramos, the CDC report at one point advises medical examiners to list on death certificates any "significant

- 6 -

conditions that contributed to the death." Id. at 13. Rosario-Ramos cites to another section of the CDC document that characterizes these "other significant conditions" as diseases or conditions that "may have contributed to the death." Id. at 17 (emphasis added). Relying on this latter statement, Rosario-Ramos argues that a report averring that an event "may" have contributed to a death provides insufficient support for a finding that that event "did" so contribute.

Rosario-Ramos marshals no legal or evidentiary support for the proposition that courts should interpret the autopsy report by reference to CDC guidance. Thus, we cannot say with any confidence that the phrase "contributory factors" in the autopsy report carries the same indefinite meaning as the phrase "other significant conditions" within the CDC report. In other words, Rosario-Ramos has not established a basis for reading the word "contributory" in any way other than according to its plain and ordinary meaning.[2] Moreover, the record contains other evidence that buttresses the district court's finding that the attack contributed, as the word is typically understood, to Lebrón-Serrano's death. As the district court noted, most of the medical findings in the autopsy report -- which included fractures,

---

[2] As pertinent here, Merriam-Webster defines "contributory" as "playing a part in bringing about an end or result." Contributory, Merriam-Webster, https://perma.cc/V3UH-VAVK (last visited Apr. 18, 2025).

- 7 -

contusions, and lacerations on the victim's face, thigh, and back areas -- were a direct result of the beating. The victim's relative also testified that the victim was unable to sleep at the hospital, even when medicated, and that she continued to relive the assault in ways that underscored the traumatic impact of the assault.

Certainly, it might have been a coincidence that Lebrón-Serrano died nine days after the attack, as she was awaiting surgery to address the injuries caused by the beating. But against this backdrop, we cannot say that the district court's finding that the attack contributed to Lebrón-Serrano's death gives rise to "a strong, unyielding belief that a mistake has been made." United States v. Padilla-Galarza, 990 F.3d 60, 73 (1st Cir. 2021) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)); see also United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012) ("[T]he sentencing court has wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing." (quotation marks and citation omitted)). "When all is said and done, sentencing courts are entitled to draw common-sense inferences from the evidence adduced." United States v. Melendez-Rosado, 57 F.4th 32, 40 (1st Cir. 2023).

Next, we consider Rosario-Ramos's argument that his upwardly variant sentence is procedurally unreasonable because it was impermissibly based on aggravating factors that were already contemplated by the Guidelines. At sentencing, the district court applied a series of sentencing enhancements for the use of a dangerous weapon; permanent or life-threatening injury suffered by Lebrón-Serrano; physical restraint of Lebrón-Serrano; carjacking; and fact that Lebrón-Serrano was a vulnerable victim. Rosario-Ramos now contends that the district court erred by proceeding to impose, in addition to these enhancements, an upwardly variant sentence that is "based on those same factors."

To begin, we disagree with the government's contention that Rosario-Ramos failed to preserve this challenge by failing to raise it below. After the district court laid down his sentence, Rosario-Ramos objected by asserting that his proposed, upwardly variant sentence already "included all the aggravating factors that we know of in this case." This objection, though brief, was specific enough "to call the district court's attention to the asserted error." United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017). We thus review for abuse of discretion.

We have held that "a sentencing court may rely on a factor that is already included in the calculation of the [Guidelines sentencing range] to impose an upward . . . variance

- 9 -

as long as the court articulates specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation." United States v. Bruno-Campos, 978 F.3d 801, 806 (1st Cir. 2020) (cleaned up); see also United States v. Díaz-Lugo, 963 F.3d 145, 156 (1st Cir. 2020) (noting that a district court may impose an upward variance based on factors that were "considered in constructing the [Guidelines sentencing range] but not in a way that sufficiently accounts for the idiosyncrasies of a particular case"). The question before us, then, is whether the district court adequately explained why Rosario-Ramos's circumstances warrant a departure from the norm. We think it did.

At sentencing, the district court underscored the fact that Rosario-Ramos had a personal connection with Lebrón-Serrano: He had accompanied his grandfather to do work for Lebrón-Serrano at her home and had hatched the plan to rob her after she was kind enough to give him her debit card and PIN to purchase breakfast for himself and his grandfather. The court also outlined in detail the "brutal" and "unnecessary" nature of the attack, which involved blindfolding, gagging, and beating Lebrón-Serrano with a frying pan to the point of unconsciousness, even after she willingly gave up her PINs and the locations of her valuables. The court then considered the "distrust and stress" the attack had sown within the local community; the role of the attack in expediting the

- 10 -

victim's death; and the testimony that it had heard from one of Lebrón-Serrano's family members, who described the psychological torment that Lebrón-Serrano suffered because of the attack. Finally, the district court observed that from his arrest up until the sentencing hearing itself, Rosario-Ramos recanted and revised his telling of the facts, first attempting "to attribute all the aggravating factors . . . to a third individual that is non-existent," and later attempting to ascribe those same aggravating factors to his brother. See United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015) (recognizing that there is a "permissible distinction" for sentencing purposes "between [defendants] who cooperate and those who do not, and between those whose cooperation is 'prompt and full' and those whose cooperation is 'belated and grudging'" (citations omitted)).

The district court was careful and conscientious in its effort to explain why the circumstances of the offense warranted an upward variance separate and apart from the sentencing enhancements. These aggravating features are captured only in part by the enhancements, which focus on discrete and limited aspects of the offense. The district court's sentencing rationale concentrated instead on the features of the attack that made it uniquely jarring, including how it arose -- i.e., following an act of kindness and trust by Lebrón-Serrano -- and the gratuitous viciousness with which it was perpetrated. "[N]one of these

specific factors are either inherent in his crimes of conviction or fully accounted for by the [G]uidelines." United States v. Leach, 89 F.4th 189, 197-98 (1st Cir. 2023).  We conclude that these idiosyncratic circumstances are sufficient to warrant a separate basis for an upward variance and thus discern no abuse of discretion in the district court's judgment.

## C.

We turn now to Rosario-Ramos's argument that his sentence is substantively unreasonable because it is five years higher than that imposed on his brother and co-defendant, Martínez-Ramos.  We note that the standard of review for a claim of substantive unreasonableness is "somewhat blurred." United States v. Ruiz-Huertas, 792 F.3d 223, 228 (1st Cir. 2015).  But because Rosario-Ramos's substantive-reasonableness argument fails regardless, "we assume, favorably to the appellant, that review is for abuse of discretion." United States v. Demers, 842 F.3d 8, 14 (1st Cir. 2016).

We dispose of this issue quickly.  "We have routinely rejected disparity claims" when defendants "fail to acknowledge material differences between their own circumstances and those of their more leniently punished confederates." Reyes-Santiago, 804 F.3d at 467.  Such is the case here.  At sentencing, the district court outlined several differences between Rosario-Ramos and his brother.  Unlike his brother, Rosario-Ramos had a personal

connection with Lebrón-Serrano.  Rosario-Ramos was also the one who devised the plan for the robbery, recruited his brother to assist, and then lied about who perpetrated the beating.  And the district court was within its rights to consider these differences material to sentencing.  We therefore cannot say that its decision to impose a harsher sentence on Rosario-Ramos amounts to an abuse of discretion.

**D.**

Finally, we address Rosario-Ramos's alternative contention that because his sentence exceeds the Guidelines sentencing range and the already upwardly variant sentences proposed by both parties, it is substantively unreasonable.[3] Again, "we assume, favorably to the appellant, that review is for abuse of discretion."  Demers, 842 F.3d at 14.

The district court retains broad discretion in the realm of sentencing.  See United States v. Politano, 522 F.3d 69, 73 (1st Cir. 2008) (emphasizing that, in the context of sentencing, "the broad discretion afforded to the district court is

---

[3] Rosario-Ramos argues that his sentence also violates the parsimony principle.  See United States v. Arsenault, 833 F.3d 24, 28 (1st Cir. 2016) (defining the parsimony principle as "the obligation to impose a sentence that is sufficient, but no greater than necessary to achieve the purposes of the law" (internal quotations omitted)).  We have noted that "[a] claim that a sentence offends the parsimony principle is typically treated, for all practical purposes, as a claim that the challenged sentence is substantively unreasonable."  United States v. Coombs, 857 F.3d 439, 452 (1st Cir. 2017).  We treat this argument accordingly.

paramount"). The "linchpin" of whether a sentence is substantively reasonable is the existence of "a plausible sentencing rationale and a defensible result." Martin, 520 F.3d at 96. Under this deferential standard, we may reverse the district court on the grounds of substantive unreasonableness "if -- and only if -- the sentencing court's ultimate determination falls outside the expansive boundaries of [the] universe [of reasonable sentences]." Id. at 92. If a district court decides to depart from the Guidelines sentencing range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 552 U.S. at 50.

There is no doubt that Rosario-Ramos's sentence is steep. His sentence of twenty-three years is nine years above the maximum Guidelines-recommended sentence of fourteen years, and seven years above the upwardly variant sentence of sixteen years that the government proposed. Even so, the bar for finding that a sentence is substantively unreasonable is high. As we detailed above, the district court explained at length the aggravating factors of the offense that plausibly justified an upward variance. The district court considered, too, mitigating factors under 18 U.S.C. § 3553(a), including Rosario-Ramos's age, dependents, and educational and professional background. Still, it determined that several elements of Rosario-Ramos's offense were grievous

enough to justify a significant upward departure from the Guidelines sentencing range. Affording, as we must, due deference to the district court's weighing of factors, we are persuaded that the district court's justification was "sufficiently compelling" to support the upward variance, Gall, 552 U.S. at 50, and that the district court's rationale was at least "plausible," Martin, 520 F.3d at 96.

Nor can we say that Rosario-Ramos's sentence is substantively indefensible. We have upheld similarly dramatic upward variances before. See, e.g., Gallardo-Ortiz, 666 F.3d at 810, 812, 818 (sentence that was 146% of the maximum Guidelines-recommended sentence); United States v. Scherrer, 444 F.3d 91, 92, 95 (1st Cir. 2006) (en banc) (sentence that was 152% of the maximum Guidelines-recommended sentence); Díaz-Lugo, 963 F.3d at 150, 158 (sentence that was 162% of the maximum Guidelines-recommended sentence). But see United States v. Zapete-Garcia, 447 F.3d 57, 58-61 (1st Cir. 2006) (invalidating, as substantively unreasonable for lack of adequate explanation, a sentence that was 800% of the maximum Guidelines-recommended sentence). Rosario-Ramos's sentence, viewed against this case law and considered alongside the district court's sentencing rationale, does not exceed "the expansive boundaries of [the] universe [of reasonable sentences]." Martin, 520 F.3d at 92. "The fact that [this] court might reasonably have concluded that a different sentence was

appropriate is insufficient to justify reversal of the district court." Gall, 552 U.S. at 51.  Because the district court's rationale for its sentence is at the very least "plausible," and the sentencing outcome "defensible," we decline to disturb its judgment.  Martin, 520 F.3d at 98.

### III.

For the foregoing reasons, we affirm the district court's judgment.